IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BIANCEA ANDERSON, Mother And Next       PLAINTIFF
Friend of Dequarris K'marj Anderson,
A Minor

VS.       CIVIL ACTION NO. 3:18-cv-254-TSL-RHW

SOUTH SUNFLOWER COUNTY HOSPITAL;       DEFENDANTS
PHIL BRYANT, In His Capacity As
Governor Of The State Of Mississippi;
JAMES M. HOOD, III, In His Capacity As
Attorney General Of The State of
Mississippi;

COMPLAINT FOR DECLARATORY AND
JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff, by and through counsel of record, pursuant to Fed. R. Civ. P. 57(b)(1) and 65(a) and (b), and files her complaint for declaratory and preliminary and permanent injunctive relief against the administration enforcement and implementation of the limitation of liability provisions set forth in Miss. Code Ann. Section 11-46-15(Rev. 1992) against the named defendants, and in support thereof would show unto the Court the following:

I. Introduction

1. This civil action is filed as a federal constitutional challenge to the $500,000 limitation of liability provision in Miss. Code Ann. Sections 11-46-15 (Rev. 1992) to obtain declaratory judgment, preliminary and permanent injunctive relief adjudicating, declaring and determining the Five Hundred Thousand Dollars ($500,0000 limitation of liability provisions

set forth in Miss. Code Ann. Section 11-46-15(Rev. 1992) does not fall within the market participation doctrine, has not been specifically authorized by the United States Congress and is nothing more than economic protectionism – – regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. The limitation of liability provisions set forth in Section 11-46-15 violates the dormant aspect of the Commerce Clause of the United States Constitution and burdens interstate medical and healthcare services commerce. Also, plaintiff bring a pendent state law Mississippi Tort Claims Act (MTCA)medical negligence claim against SSCH pursuant to Miss. Code Ann. Section 11-46-1, et. seq. Pursuant to supplemental jurisdiction under U.S.C. Section 1367 and seeks monetary damages for SSCH's physician, nursing and employee negligence under Mississippi law on April 29, 2008, during the birth of Dequarrius Anderson, at the SSCH, in Indianola, Sunflower County, Mississippi. It is believed that Dequarrius Anderson injuries and damages were caused by medical negligence at his birth exceeds the $500,000 limitation of liability in Section 11-46-15.

## II. Subject Matter Jurisdiction

2. Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983 for violations of rights, privileges, or immunities secured by Article I, Section 8, the equal protection clause of the Fourteenth Amendment to the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff seeks declaratory and injunctive relief against the enforcement of the $500,000 limitation of liability provisions set forth in Miss. Code Ann. Section 11-46-15(Rev. 1992), its implementing rules, regulations, policies and practices of

the State of Mississippi, in the administration, enforcement and implementation these discriminatory regulatory measures and provisions, which, facially and as- applied, violate plaintiff's constitutional rights, under the dormant commerce clause and equal protection clause of the Fourteenth Amendment.

3. Accordingly, this Court has jurisdiction over this action under 28 U.S.C. Section 1331 (federal question jurisdiction) and Section 1343 (civil rights jurisdiction).

### III. Venue

4. Pursuant to 28 U.S.C. Section 1391(b), venue is proper in the United States Disctrct Court for the Southern District of Mississippi. As described more fully below, a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Northern Division of the Southern District of Mississippi. In 1992, the Mississippi Legislature met at the Mississippi State Capitol in Jackson, Hinds County, Mississippi, to enact into law the challenged MTCA provisions.

5. Additionally, the Mississippi Governor Mansion and the Mississippi Attorney General office are situated in Hinds County, Mississippi and are located in the Northern Division of the Southern District of Mississippi.

### IV. The Parties

6. Pursuant to Fed. R. Civ. P. 17(a), plaintiff is an adult resident citizen of Belzoni, Humphreys County, Mississippi and as the mother and next friend of her child, bring this civil action under the Commerce Clause, Equal Protection and MTCA medical negligence claims on behalf of Dequarrius K'Marj Anderson, a minor.

7. Defendant South Sunflower County Hospital (SSCH) is a county governmental entity and political subdivision of the State of Mississippi under the Mississippi Torts Claim Act and is organized and existing under the laws of the State of Mississippi and pursuant to Fed. R. Civ. P. 4(d)(8) maybe served with process of this Court by and through its hospital administrator, Mr. Courtney Phillips, 121 East Baker Street, Indianola, Sunflower County, Mississippi 38751. Defendant SSCH is vicariously liable for the acts and omissions of its physicians, nursing, lab and hospital employees acting within the course and scope of their employment, during the child's birth at SSCH.

8. Defendant Phil Bryant is an adult resident citizen of the State of Mississippi, is the duly elected Governor of the State of Mississippi. Governor Phil Bryant is sued in this action in his official capacity of Governor (Chief Executive Officer) and as a member of the MSBOEC and process of this Court may be served on Governor Bryant at the Governor's Office, Walter Sillers Building, 550 High Street, Suite 1900, Jackson, Mississippi 39201. Pursuant to Miss. Constn. Art. 5 Sections 116 to 143 (1890), Governor Bryant, as the chief executive power of this State, shall see that the laws are faithfully executed and is sued in his official capacity.

9. Defendant James M. Hood, III is an adult resident citizen of the State of Mississippi. Pursuant to Fed. R. Civ. P. 24, notice is being provided to Mississippi Attorney General (MAG) Hood that the federal constitutionality of the $500,000 limitation of liability provisions set forth in Miss. Code Ann. Section 11-46-15(Rev. 1992) are being challenged, under dormant commerce clause and the equal protection clause. Attorney General Hood

is sued in this action in his official capacity of Attorney General and process of this Court may be served on this Attorney General Hood at the Attorney General Office, Walter Sillers Building, 550 High Street, Suite 1200, Jackson Mississippi 39201. Attorney General Hood is sued in his official capacity.

10. The named defendants are sued for injunctive, declaratory and equitable relief under federal law and under the MTCA negligence claims.

11. At all relevant times set out herein, the named defendants acted under the color of the statutes, ordinances, regulations, customs, and usages of the State of Mississippi.

12. Plaintiff seeks declaratory and injunctive relief that the provisions of Miss. Code Ann. Section 11-46-15 (Rev. 1992) which limit liability for any in-state governmentally owned hospital to $500,000 is a regulatory measure that violate the dormant commerce clause of the United States Constitution, by discriminating against out-of-state medical providers and against interstate commerce.

13. The $500,000 limitation of liability provisions is Section 11-46-15 exist for no legally valid reason beyond economic protectionism established to shield in-state local governmentally owned Mississippi hospitals from interstate competition. Because - and only because - of the barriers posed by the $500,000 limitation of liability provisions as an in-state regulatory measure imposes unfair and discriminatory burdens on interstate commerce.

14. Miss. Code Ann. Section 11-46-15 (Rev. 1992) violate the Commerce Clause because the provisions mandate "differential treatment" of in-state and out-of-state economic interests that benefits the former and burden the latter. Moreover, the State of Mississippi does

not own SSCH, but Sunflower County, Mississippi owns SSCH. Section 11-46-15 is a regulartory measure enacted for economic protectionism.

## V. Written Notice To Governmental Entity

15. Pursuant to Miss. Code Ann. § 11-46-11 (Rev. 2012), a medical negligence claim is not actionable unless the governmental entity is given at least ninety (90) days prior written notice of the claim. SSCH has received plaintiff's notice of claim on behalf of her minor son. Since plaintiff has provided defendant with at least ninety (90) days notice of intent to pursue medical negligence claims, plaintiff's medical negligence claims, pursuant to the MTCA Section 11-46-11 (Rev. 2012), are actionable.

## VI. Facts

16. On April 28, 2008, at 1935, Biancea Anderson (Anderson) presented to SSCH in Indianola, Mississippi for labor and delivery of her child. The medical assessment was performed by the SSCH obstetrics labor and delivery staff members Dr. Larry Boyd, Dr. Edgar Donahoe and Brinda Cooper, R.N. Anderson noted Anderson was having contractions that were irregular with an onset of 0800 and reported no solid food or drinks since 1500. Upon presentation, her vital signs were: BP 104/64; T - 98.8; P - 72; R - 18; dilation 3, effacement 70, Station -1, presenting part; vertex FHT 140, reactive variability and negative Group B streptococcus. Previous OB complications were noted as Hyper emesis, repair sutures and medications: 2.0 Vicryl. At 2126, RN Cooper notes pain 10/10, dilation 5-6, effacement 90%, Station +1, FHT 150, FHM external, variability, reactive. Negative deceleration, intra venous fluid lactated ringers and contractions at moderate strength with 1

to 2 minute frequency and vertex position were also noted.

17. At 2146, 1 mg stadol, intra venous oush, lactated ringers right hand, 125 mg IVF, 18 g cathlon to right hand X 2 attempts blood specimen collected and sent to lab. At 2248, strength was noted as strong, every minute, duration of one minute, FHT 120 FHM external and vertex position were noted by RN Cooper.

18. At 2250, Anderson was noted to be off of the monitor and transferred to delivery room via cart in stable condition. Artificial ruptures of membrane at 1 hour 10 minutes before delivery. At 2317, vacuum applied x 4 per Dr. Boyd and again at 2326 vacuum applied x 4 per Dr. Boyd; at 0024 Anderson was born; his APGAR score was: 1 minute - 4; 5 minute - 6 and 10 minute - 9; Output: Urine, meconium; Newborn Transitional Record: Illegible notes; at 0040, her vital signs were:R - 98, T - 95.4, P - 156; oxygen saturation 93%; at 0045, Anderson was received in nursery from OR; he was weighed and placed on radiant warmer with warm, humidified O2 at 100% per Oxyhood and Dr. Donohoe arrived. Chest X- ray ordered. Infant grunting loudly. No nasal flaring. No retractions. Tone: floppy, skin color blue, head: large caput, lungs wet sound, good breath sounds and harsh sounding cry; at 0055, a chest X- ray was done; infant was active and crying and an IV was established; blood culture drawn; the Dextrose 5 ½ Saline started at 10cc/hr; at 0115, Ampicillin, then Claforan doses given IVP slowly and was tolerated well.

19. At 0140, his vital signs were: R - 80; T - 98.5; P - 141; oxygen saturation 98%; at 0200, the infant was active and crying, irritable, cries and kicks without any stimulus; at 0215, the infant was asleep and quiet for first time since admission; tachypnea with respiration

90; the child was noted to be resting on abdomen under radiant warmer and 100% oxygen; at 0245, he was quiet for a few minutes; then crying again. Vital signs stable; at 0240, his vitals were : R - 90; T - 98.9; P - 155; oxygen saturation 100%; at 0340, his vitals were: R - 172; T - 98.6; P - 172; oxygen saturation 100%; at 0440, his vitals were: R - 82; T - 98.4; P - 117; oxygen saturation 100%.

20. At 0500, his vital signs were stable; excessive crying noted; he remains on radiant warmer; tachypnea noted; under 100% O2 per Oxyhood; at 0510, 2 hour glucose: 54; New born Assessment on discharge: Illegible notes; complications of antepartum and delivery: Primary C-section, CPD/FTP. Vacuum and applied x 4 per Dr. Boyd. Probable meconium aspiration noted.

21. On Admission at 0100, his weight was 7 lbs. 8 oz, 3406 grams and head circumference: 14, Length 20. On Discharge at 0800, Blood type: B positive, blood sugar 54, hematocrit 37.3, hemoglobin electrophoresis 12.1 and negative for Coombs and Hepatitis B. Complications in Nursery: Low oxygen when out of Oxyhood; meconium aspiration. Feeding: Nil per oral. Discharge Diagnosis: meconium aspiration. Newborn Discharge Assessment: ID bands verified between mother and baby. Foot prints complete and mother offered a copy. Newborn transferred to MCU at University of Mississippi Medical Center (UMMC) in Jackson, Mississippi. Newborn will not reside with the mother. Skin condition and ability to void/ stool: Good. Medications on discharge: Dextrose ¼ NS at 10 ml/ hour, Ampicillin 200 mg IV, Claforan 200 mg. Unresolved issues: Transfer to MCU at UMMC. Assessment of newborn: Oxygen saturation 100% Oxyhood. Report to MCU. IV

site right arm with 24g intact. IV fluid, infusing well. Active muscle tone, color pink. Respiratory tachypnea. Cord clamp intact. Discharged to UMMC. Discharge Summary: Diagnosis: Probable meconium aspiration syndrome.

22. The child remained at the UMMC from April 29, 2008 to May 3, 2008. His UMMC discharge summary indicates the child was delivered via C-Section after 8 failed attempts at vacuum extraction; the amniotic fluid was meconuim stained and the infant required PPV in the delivery room and was subsequently placed under oxyhood with 100% Fi O2 at OSH; sepsis ruled out.

23. On February 6, 2017, Dequarrius Anderson underwent an Independent Medical Examination (IME) performed by Dr. Howard T. Katz in Jackson Mississippi. Dr. Katz's Assessment, follows:

ASSESSMENT:

1. 8-YEAR-OLD CHILD WITH BELOW AVERAGE INTELLIGENCE AND BELOW AVERAGE ACADEMIC ACHIEVEMENT

2. MILD-TO-MODERATE SENSORINEURAL HEARING LOSS BETWEEN 2000 AND 8000 HZ BILATERALLY REQUIRING HEARING AIDS

3. 8-YEAR-OLD CHILD BORN AT TERM PREGNANCY DELIVERED BY CESAREAN SECTION AFTER FAILURE TO PROGRESS, CEPHALOPELVIC DISPROPORTION WITH MECONIUM STAINED FLUID .

4. IDSTORY OF MECONIUM ASPIRATION SYNDROME

5. ASTHMA

6. HEADACHES

CAUSATION: I am unable to determine causation of any of Dequarrius Anderson's problems.

PATIENT: DEQUARRIUS ANDERSON
DATE: FEBRUARY 6, 2017
PAGE: 8

ANTICIPATED FUTURE MEDICAL NEEDS: Based to a reasonable degree of medical certainty, Dequarrius Anderson will need hearing aids for the rest of his life. He will need to be evaluated by an otolaryngologist and an audiologist an average of one time per year for the rest of his life. Dequarrius Anderson is at an increased risk for autism, but this cAnn.ot be predicted to a reasonable degree of medical certainty1

PHYSICIAN FOLLOW-UP: Based to a reasonable degree of medical certainty, Dequarrius Anderson should follow-up with a pediatric neurologist or pediatric psychiatrist an average of four times per year through age 26. After age 26, Dequarrius Anderson should follow-up with the appropriate physician most likely a neurologist an average of two times per year. He will need to follow up with a pediatrician regarding has asthma an average of four times per year until age 21 and then an average of two times per year for the rest of his life.

MEDICATIONS NEEDS: Dequarrius Anderson will need to be treated for asthma most likely for the rest of his life. Although some medications may be necessary for behavior and/or cognition, none can be anticipated to a reasonable degree of medical certainty.

PSYCHOLOGICAL/PSYCHIATRIC NEEDS: Dequarrius Anderson should have a complete neuropsychological evaluation

LONG-TERM RESIDENTIAL NEEDS: At this point in time, I cAnn.ot determine whether Dequarrius Anderson will ever be competent to manage his own life. Neuropsychological evaluation may help answer this question. If he does not reach
competency, he will need a great deal of assistance and supervision.

SPECIAL NEEDS REGARDING HEARING IN ADDITION TO HEARING AIDS: Dequarrius Anderson should have preferential seating near the teacher. Dequarrius Anderson would benefit from having written notification of homework assignments to verify that his assignments are

understood. Using a note taker or outlined notes provided ahead of time by the child's teacher is appropriate. Closed captioning of audio visual materials is appropriate. An extra set of textbooks to use at home is appropriate. Age appropriate training in self advocacy is appropriate. Reevaluation by an audiologist and otolaryngologist as above.

PATIENT: DEQUARRIUS ANDERSON
DATE: FEBRUARY 6, 2017
PAGE: 9

LONG-TERM PROGNOSIS:: At this point in time, I cAnn.ot determine whether Dequarrius Anderson will be able to sustain any gainful employment. If he is to sustain gainful employment, it will be an entry level position. He will have to have a tolerant employer who is willing to train him. It will take more to train Dequarrius Anderson. Once he is trained, he should be able to perform entry-level jobs.

Again, it is stressed to Ida Mae Anderson, Bianca Anderson, Ontarion Anderson and Dequarrius Anderson that Dequarrius Anderson was here for an evaluation only. No treatment was rendered and no doctor/patient relationship was established. Further since the purpose of this visit was an Independent Medical Evaluation there is no confidentiality in that a report will be generated and provided to the referral source. Dequarrius Anderson states he understands this.

I understand that it is my duty to provide my opinions on matters within my expertise and to a reasonable degree of medical certainty. This duty overrides any obligation to the person from whom I have received instructions or by whom I am paid. All opinions expressed in this report are to a reasonable degree of medical certainty unless specifically state otherwise.

    24.    A complete copy of Dr. Katz's IME is attached hereto as Exhibit 2.

    25.    By Life Care Plan dated September 8, 2017 prepared by Kathy Smith, Occupational Consulting, LLC, 123 Jacks Place, Suite D. Brandon, Mississippi 39042, Dequarrius Anderson's future medical expenses alone is $537,307.11

26.    A complete copy of Life Care Plan is attached hereto as Exhibit 3.

## CONSTITUTIONAL VIOLATIONS

### VII. First Claim for Relief:(Commerce Clause Violation)

27. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 26 above.

28. The Commerce Clause of the United States Constitution (Article I, Section 8, clause 3) creates a unitary national market in goods and services by giving Congress the exclusive power to regulate interstate commerce. Consequently, the Commerce Clause operates as an external restraint on the legislative powers of the states even when Congress has not exercised its power.

29. Under this dormant aspect of the Commerce Clause, States are prohibited from enacting laws that either (i) discriminate against interstate commerce; or (ii) incidentally burden interstate commerce more than they benefit local interests. Miss. Code Ann. Section 11-46-15(Rev. 1992) does both.

30. The limitation of liability provisions in Section 11-46-15 explicitly apply to in-state governmentally owned hospitals, not just State of Mississippi owned in-state hospitals. The market participation doctrine is inapplicable and Congress has not authorized these regulatory measures.

31. There is a nationwide interstate commerce market for medical care and healthcare services.

32. Upon information and belief, all or nearly all of the in state hospitals that Section

11-46-15(Rev. 1992) are not owned by the State of Mississippi but are owned by municipal or county government entities. Therefore, state market participation doctrine is inapplicable. 2015 Report on Mississippi Hospitals, pages 1-12. Exhibit 1.

33. Miss. Code Ann. Section 11-46-15 limitation of liability provisions retard and restrict the flow of out of state healthcare services into Mississippi, as competition for state healthcare services.

34. There is an interstate market for medical and healthcare service and treatment and services. Miss. Code Ann. Section 11-46-15 limitation of liability requirement provisions restrict, retard and burden services in interstate commerce. Out of state healthcare providers can move across state lines to provide these medical services, but are put at competitive disadvantage by the limitation of liability provisions in Miss. Code Ann. Section 11-46-15(Rev. 1992).

35. Miss. Code Ann. Section 11-46-15 limitation of liability provisions prevent out-of-state medical providers from offering their independent services without going through the uncertain, costly, and burdensome process of applying for and receiving a state issued certificate of need.

36. Miss. Code Ann. Section 11-46-15 limitation of liability provisions have the purpose of discriminating against out-of-state businesses, in favor of in-state businesses.

37. Miss. Code Ann. Section 11-46-15 limitation of liability provisions have the effect of discriminating against out-of-state businesses, in favor of in-state businesses.

38. Miss. Code Ann. Section 11-46-15 limitation of liability provisions place

substantial burdens on interstate commerce healthcare services and interstate commerce in medical services and healthcare services that are not justified by local benefits.

39. Miss. Code Ann. Section 11-46-15 limitation of liability provisions have the purpose of protecting in-state governmental healthcare and medical services businesses from out-of-state competition.

40. Miss. Code Ann. Section 11-46-15 limitation of liability provisions have the effect of protecting in-state governmental healthcare businesses from interstate commerce competition.

41. Protecting in-state businesses from interstate competition is not a legitimate state interest.

42. Miss. Code Ann. Section 11-46-15 limitation of liability provisions care have the purpose of favoring in-state governmental healthcare businesses.

43. Miss. Code Ann. Section 11-46-15 limitation of liability provisions have the effect of favoring in-state healthcare and medical care businesses.

44. Miss. Code Ann. Section 11-46-15 limitation of liability provisions do not actually achieve any legitimate local benefits.

45. Upon information and belief, defendants possess no evidence that Miss. Code Ann. Section 11-46-15 limitation of liability provisions actually achieve any legitimate local benefits.

46. Miss. Code Ann. Section 11-46-15 limitation of liability provisions violates plaintiff's right under the Commerce Clause of the United States Constitution to participate in the national marketplace and the flow of interstate commerce.

47. Plaintiff has been and continue to be harmed by enforcement of Miss. Code Ann. Section 11-46-15 limitation of liability provisions.

### VII. Second Claim for Relief: Equal Protection Violation

48. Plaintiff realleges and incorporate by reference each and every allegation set forth in paragraphs 1 through 47 above.

49. Under the Fourteenth Amendment to the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws."

50. Plaintiff has been and continues to be harmed by enforcement of Miss. Code Ann. Section 11-46-15 limitation of liability provisions for in-state governmentally owned hospitals. The life care plan for her child exceeds $500,000.

51. Miss. Code Ann. Section 11-46-15 limitation of liability provisions purpose is to protect established governmental owned healthcare and medical businesses from out of state economic competition.

52. Intrastate economic protectionism is not a legitimate state interest under the Fourteenth Amendment or the dormant commerce clause and has not been specifically authorized by the United States Congress.

53. Plaintiff has been and continue to be harmed by enforcement of Miss. Code Ann. Section 11-46-15 limitation of liability provisions in favor of in-state governmental owned hospitals and healthcare services.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1. For entry of judgment declaring the $500,000 limitation of liability provisions in Miss. Code Ann. Section 11-46-15 are unconstitutional facially and as applied to the extent the limitation of liability provisions it discriminate against interstate commerce in medical care and healthcare services, and therefore violate the dormant Commerce Clause of the United States Constitution;

2. For an entry of judgment declaring Miss. Code Ann. Section 11-46-15 limitation of liability provisions are unconstitutional on their face and as applied to the extent the provisions violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

3. For entry of a permanent injunction against the named defendants prohibiting the administration, enforcement and implementation of the $500,00 limitation of liability provisions set forth in Miss. Code Ann. Section 11-46-15;

4. For an award of attorney's fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

5. For further legal and equitable relief as this Court may deem just and proper.

SO COMPLAINED, this the 22nd day of April, 2018.

                Respectfully Submitted,

                Biancea Anderson, Mother and Next Friend of Dequarris K'Marj Anderson, A Minor


                By:  s/Ellis Turnage
                     ELLIS TURNAGE

OF COUNSEL:

ELLIS TURNAGE, MSB # 8131
TURNAGE LAW OFFICE
108 North Pearman Avenue
Post Office Box 216
Cleveland, Mississippi 38732
Tel: (662) 843-2811
Fax: (662) 843-6133
eturnage@etlawms.com